**In re BOHLEN ENTERPRISES, LTD.,
d/b/a Central Office Equipment,
Debtor.**

**Thomas G. McCUSKEY, Substitute Trustee for Wesley B. Huisinga, Plaintiff/Appellant/Cross–Appeal Appellee,**

**v.**

**NATIONAL BANK OF WATERLOO, Defendant/Appellee/Cross–Appeal Appellant.**

No. C 87–2034.
Bankruptcy No. 86–01665W.

United States District Court,
N.D. Iowa, E.D.

Sept. 23, 1987.

George D. Keith, Waterloo, Iowa, for Nat. Bank of Waterloo.

Thomas G. McCuskey, Cedar Rapids, Iowa, trustee.

Michael Dunbar, Waterloo, Iowa, for debtor.

## ORDER

HANSEN, District Judge.

This matter is before the court on appellant Thomas G. McCuskey's (hereinafter "Trustee") appeal, filed March 23, 1987, and the cross-appeal of the National Bank of Waterloo (hereinafter "Bank"), filed March 30, 1987, from a decision of the bankruptcy court[1] entered February 20, 1987, 78 B.R. 556 (Bkrtcy.N.D.Iowa). Both sides have filed briefs outlining their arguments.

The sole issue before the bankruptcy court was whether a payment by the debtor to the Bank in the amount of $191,777.27 constituted a preference which is avoidable by the trustee in bankruptcy under the provisions of Bankruptcy Code § 547(b). The bankruptcy court made the following findings of fact and conclusions of law and entered the following order.

## FINDINGS OF FACT

1. At the time of the transactions concerned, the debtor owed the National Bank of Waterloo (NB) two debts in the principal amounts of $125,000 and $189,000, plus accrued interest. These obligations were secured under an agreement dated October 3, 1983, for which a financing statement was filed October 5, 1983.

2. On or about April 28, 1986, in response to insistence by NB that payments be made by the end of the month, the debtor applied for a $200,-000 loan from the John Deere Community Credit Union of Waterloo (Credit Union).

3. At the time of the loan application, William Bohlen (Bohlen), president of the debtor corporation, and the Credit Union loan officer agreed that a part of the loan proceeds would be used for payment of the debtor's $125,000 loan obligation to the bank. The remainder was to be used for miscellaneous purposes. This agreement was confirmed by the issuance of a check by the Credit Union on Thursday, May 1, 1986 in the amount of $125,068.50 made payable to NB and the debtor. The existence of the debtor's $189,000 debt to NB was not then known to the Credit Union.

4. On Wednesday, April 30, 1986, a share draft account was established by the Credit Union for the debtor, and Bohlen received share drafts for use by the debtor. The share account balance was zero.

5. On the same date, and prior to the Credit Union's final approval of the $200,000 loan, Bohlen wrote a share draft in the amount of $192,000 for deposit in the debtor's business account at NB, and made the deposit on that date.

6. On the same date, Bohlen wrote three checks on the NB account, all payable to NB, covering the principal and interest due on the $189,000 obligation and the interest due on the $125,000 obligation. These checks were in the respective amounts of $189,000, $1,708.77 and $1,068.50.

7. On Thursday, May 1, 1986, the share draft which Bohlen had written the previous day for deposit in NB was presented to the Credit Union for payment. The draft was cleared by the Credit Union.

8. The $192,000 deposit by the debtor was not in the ordinary course of its business.

9. The debtor was insolvent at the time of the payment of the stated sums to the bank.

1. The Honorable Thomas Wood, United States Bankruptcy Judge.

**488**

10. The debtor filed a Chapter 7 bankruptcy petition on July 21, 1986, and that proceeding is now pending.

. . . .

## CONCLUSIONS OF LAW

1. The Trustee is entitled to recover from the National Bank of Waterloo the sum of $66,708.77 on the basis that the payment of that sum to the bank by the debtor was a preferential transfer under Bankruptcy Code § 547(b).

2. The Trustee is entitled to interest on the sum of $66,708.77 at the rate of 6.18 percent dating from August 19, 1986, the date the complaint was filed, to the date payment is made.

3. The bank is entitled to retain the sum of $125,068.50 paid to it by the debtor, on the basis that said payment was made pursuant to a contractual arrangement between the debtor and the Credit Union for use of that portion of its loan for payment of an obligation of the debtor to the bank, and, as such, was not a preferential transfer.

## ORDER

The National Bank of Waterloo is directed to pay to the Trustee, Wesley B. Huisinga, the sum of $66,708.77 plus interest at the rate of 6.18 percent for the period from August 19, 1986 to the date of payment.

Memorandum and order re: Trustee's claim of preference, filed February 20, 1987.

Bankruptcy Rule 8013 sets forth the standard used by this court when reviewing decisions of the bankruptcy court.

On appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Conclusions of law are reviewed de novo.

This court has carefully reviewed the record and finds that the bankruptcy court's findings of fact are supported by the record and are not clearly erroneous. The next question is whether the bankruptcy court's conclusions of law are correct.

The Trustee contends that the bankruptcy court erred in holding that the Bank was entitled to retain $125,068.50 of the amount in dispute. The court found that, pursuant to the "earmark" doctrine, this amount did not constitute "property of the estate." The Bank, on the other hand, contends that the bankruptcy court erred in holding that $66,708.77 of the disputed amount constituted a preferential transfer.

■ This court finds that the bankruptcy court was correct in holding that the Bank was entitled to retain $125,068.50 as "earmarked" funds. In general, when a third party makes a loan to a debtor for the specific purpose of satisfying the claim of a designated creditor, the amount of this loan does not become the "property of the debtor" and no preference is created. 4 *Collier on Bankruptcy*, 547–03, 547–25 (21st ed. 1987). Although the manner in which the Bank was paid was not in conformance with the Credit Union's plan, it is evident that the Credit Union intended to earmark $125,068.50 for payment of Bohlen's debt with the Bank.

■ With regard to the remaining $74,931.50, the intent of the Credit Union was to place it in Bohlen's newly opened share draft account and give Bohlen discretionary power over the use of these funds. Tr. p. 37. There was no intent on the part of the Credit Union to "earmark" these funds. *Id.*

■ The Bank argues that by honoring the $192,000 share draft, the Credit Union extended an additional loan to Bohlen and that these funds were "earmarked" to pay off the $189,000 loan plus interest from the Bank to Bohlen. This court finds little merit in this contention.

Mr. Garold Base, an officer of the John Deere Credit Union, testified before the bankruptcy court that debtor's share draft account was not overdrawn at the time of the presentation of the $192,000 share draft for payment on May 1, 1986. *See* Tr. pp. 43–44. As such, no "additional loan" was extended to debtor by the Credit Union.

█ The next dispute between the parties concerns the bankruptcy court's holding that $66,708.77 of the $191,777.27 transferred from Bohlen to the Bank constituted a preferential transfer under Bankruptcy Code § 547(b). The bankruptcy court properly found that this $66,708.77 was "property of the debtor" within the meaning of 11 U.S.C. § 547(b).

The Trustee may avoid transfer of the debtor's property made 90 days before the filing of the debtor's bankruptcy petition as preferential under 11 U.S.C. § 547(b), which provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Pursuant to subparagraph (5), the bankruptcy court compared what the Bank received by the transfer with what the Bank would have received in a Chapter 7 liquidation proceeding. This court finds no error in the math or logic of the bankruptcy court's conclusion that the Bank received $66,708.77 more by the debtor's payment than it would have received in a Chapter 7 proceeding.

The Bank also contends that the bankruptcy court erred in holding that the Bank had no right of setoff· under 11 U.S.C. § 553. The bankruptcy court advanced three reasons for denying a right of setoff, any one of which is sufficient to deny the setoff. The court finds the bankruptcy court's reasoning to be correct. The bankruptcy court properly denied the Bank any setoff.

In short, the court finds no error in any part of the well-reasoned opinion of the bankruptcy court.

### ORDER:

Accordingly, It Is Ordered:

The decision of the bankruptcy court, entered February 20, 1987, is affirmed.